IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 09-cv-02870 - LTB -BNB

DAVID CHARLES HOLDBROOK,

    Plaintiff,

v.

SAIA  MOTOR FREIGHT LINE, LLC,

    Defendant.

_____

ORDER
_____

    This case is before me on Defendant SAIA Motor Freight Line, LLC's ("SAIA") Motion for Summary Judgment [Doc # 38].  After consideration of the motion and all related pleadings, as well as the case file, I grant the motion in part and deny it in part for the following reasons.

## I.  Facts

    In this lawsuit, Plaintiff David Charles Holdbrook ("Holdbrook") asserts claims wrongful discharge in violation of public policy and for intentional infliction of emotional distress.  The following facts are undisputed for purposes of SAIA's pending motion unless otherwise noted.

    Holdbrook was hired by SAIA, a trucking company, as a city driver in its Denver facility in October of 2006.  During the relevant time, Daniel De Souza ("DeSouza") was the terminal manager for SAIA's Denver facility, and Bill Kennedy ("Kennedy") was the facility's regional manager.  As a city driver, Holdbrook had to be able to frequently load and unload trailers and to lift, without assistance, 100 pounds to waist height, 75 pounds to shoulder height, and 50 pounds overhead.  As a city driver, Holdbrook also had to complete vehicle inspection reports noting

any maintenance issues he observed with tractors and trailers assigned to him.

On occasion, maintenance issues noted by Holdbrook were fixed or the subject vehicles were taken out of service and different vehicles assigned to him. Holdbrook alleges, however, that he was once instructed to drive a tractor that he did not feel was safe and was only assigned another tractor after he refused to do so. Holdbrook further alleges that he was instructed to drive trailers that he did not feel were safe on four occasions. On one of these occasions, Holdbrook was assigned another trailer after he refused to drive the one originally assigned. On another occasion, the assigned trailer was repaired after he refused to drive it in its existing condition. On the other two occasions, Holdbrook proceeded to drive the assigned trailers in their existing conditions. Both DeSouza and the shop supervisor made negative comments about Holdbrook voicing concerns regarding the safety of SAIA vehicles.

On July 26, 2007, Holdbrook suffered a work-related injury when unloading a truck with an allegedly defective lift gate. After examination, a workers' compensation doctor released Holdbrook to work with restrictions. Specifically, Holdbrook was limited to no repetitive lifting over 20 pounds; no bending greater than 10 times per hour; and no pushing and/or pulling over 20 pounds of force. Holdbrook was also told that he could not drive a truck. Holdbrook filed a workers' compensation claim on or about August 16, 2007.

Upon returning to work, Holdbrook was given a transitional work assignment performing data entry, filing, and other tasks. As part of his transitional work assignment, Holdbrook worked with undeliverable product and performed yard inspections. When working in these areas, Holdbrook was required to climb, bend, and lift to a degree that he felt exceeded his work restrictions. Holdbrook was also asked to drive a truck on two occasions in violation of his work

restrictions but refused to do so. Throughout his transitional work assignment, Holdbrook felt "harassed" and "humiliated" by De Souza, Kennedy, and other SAIA drivers. Among other things, in staff meetings attended by Holdbrook, Kennedy and DeSouza discussed that drivers would not be getting annual raises because of on-the-job injuries that had occurred.

SAIA maintains an attendance policy that assesses points each time an employee misses work subject to certain exemptions including absences due to "compensable on-the-job injuries." An employee assessed with 12 or more points within a 12 month period is subject to termination under this policy. On October 3, 2007, Holdbrook received "final written notice ... that [his] job was in jeopardy based on [his] failure to report to work as scheduled." Additionally, this notice advised Holdbrook that he had been assessed with 12 points and that an assessment of additional points would result in further disciplinary action "up to and including termination."

Holdbrook called in sick on November 6, 2007 and was terminated on November 13, 2007. SAIA contends that its human resources department made the decision to terminate Holdbrook after DeSouza notified the department that Holdbrook had reached the maximum number of points allowed under the attendance policy. Holdbrook contends, however, that he was terminated in retaliation for the safety concerns he raised regarding SAIA's tractors and trailers and for being "a drain on the company" as a result of his work-related injury.

At the time of his deposition on June 30, 2010, Holdbrook conceded that he was unable to work as a city driver and that he had not been told he could now drive a truck. Holdbrook has also disclosed an expert report dated in August of 2010 in which Doris J. Shriver, OTR, FAOTA, QRC, CLCP, opines that Holdbrook "cannot do any work as it is customarily defined."

## II.  Standard for Review

The very purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The non-moving party has the burden of showing that there are issues of material fact to be determined.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial.  *Celotex*, 477 U.S.  at 323;  *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).  Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.  *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e).  These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves."  *Celotex*, 477 U.S. at 324.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial.  *Celotex*, 477 U.S. at 323.  The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson Liberty Lobby, Inc.*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III.  Analysis

Holdbrook's Complaint asserts two claims for wrongful termination against public policy (First and Second Claims for Relief) and a claim for intentional infliction of emotional distress (Third Claim for Relief) against SAIA. The first of Holdbrook's wrongful termination claims alleges that SAIA terminated Holdbrook "as a direct and proximate result of [Holdbrook] refusing to perform the illegal act of driving an unsafe commercial vehicle on the public roadways in violation of Federal and State law." *See* Complaint, ¶ 51. The second of these claims alleges that SAIA terminated Holdbrook "in retaliation for [Holdbrook] filing a worker's compensation claim arising from a work-related injury he suffered while employed by [SAIA], and/or for seeking medical care for said injury, and/or refusing to violate medical restrictions imposed upon [Holdbrook] for said injury." *See* Complaint, ¶ 56. SAIA seeks summary judgment on each of Holdbrook's claims as well as Holdbrook's ability to recover front pay as damages in the event any of his claims proceed to trial. Colorado state law controls in this diversity action.

**A.  Holdbrook's Claims for Wrongful Termination Against Public Policy**

The public policy exception to the employment at-will doctrine allows at-will employees to bring to bring a claim for wrongful discharge if they allege termination for conduct that is protected or encouraged as a matter of public policy. *Bonidy v. Vail Valley Center for Aesthetic*

*Dentistry*, 232 P.3d 277, 281 (Colo. App. 2010). To establish such a claim, a plaintiff must prove:

> (1) the employer directed the employee to perform an illegal act as part of the employee's work-related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege; (2) the action directed by the employer would violate a specific statute related to public health, safety, or welfare, or would undermine a clearly expressed policy relating to the employee's basic responsibilities as a citizen or the employee's right or privileges as a worker; (3) the employee was terminated as a result of refusing to perform the act directed by the employer; and (4) the employer was aware that the employee's refusal to perform the act was based on the employee's reasonable belief that the directed act was unlawful.

*Id.* (*citing Martin Marietta Corp. v. Lorenz,* 823 P.2d 100, 109 (Colo. 1992)).

SAIA argues that Holdbrook cannot meet this burden of proof on either of his wrongful termination claims. I disagree.

**1. Wrongful Termination Claim Based on Refusal to Drive Unsafe Vehicles**

SAIA first argues that Holdbrook's claim for wrongful termination based on his refusal to drive unsafe vehicles must fail because a statutory remedy already exists for such conduct. *See Corbin v. Sinclair Marketing, Inc.*, 684 P.2d 265, 267 (Colo. App. 1984) (public policy exception to at-will employment doctrine is not available when statute at issue provides employee with wrongful discharge remedy). In support of this argument, SAIA cites the Surface Transportation Assistance Act (the "STAA"), 49 U.S.C. § 31105, which prohibits the discharge of an employee who refuses to operate a vehicle because such operation would violate a federal regulation related to commercial vehicle safety and outlines a procedure for an aggrieved employee to file a complaint with the Secretary of Labor. *See* 49 U.S.C. § 31105 (a)(1)(B) & (b). The STAA further provides that the Secretary of Labor can order a person who has violated its provisions to "pay compensatory damages, including back pay with interest and

compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees." 49 U.S.C. § 31105(b)(3)(A)(iii).

In making this argument in its motion, SAIA assumed that Holdbrook was relying on the STAA as the "Federal and State law" that made it illegal for him to drive unsafe commercial vehicles on the public roadways. In his response to SAIA's motion, however, Holdbrook cites C.R.S. §§ 24-33.5-201 & 203 and related regulations and argues that the STAA does not preempt state law governing the same area. SAIA argues that Holdbrook's citation to other statutory authority is irrelevant because both the STAA and the Colorado statutes cited by Holdbrook are based on the same Federal Motor Carrier Safety Regulations. SAIA further argues that its argument is not one of preemption but rather recognition of the limits of the common law claim of wrongful discharge against public policy.

Holdbrook is correct that the STAA does not preempt his state law claim for retaliatory discharge based on his refusal to drive unsafe vehicles. *See* 49 U.S.C. § 31105(f) ("Nothing in this section preempts or diminishes any other safeguards ... provided by Federal or State law."). As argued by SAIA, however, I must also consider whether this claim is cognizable under Colorado common law in light of the remedy provided by the STAA. *See Masters v. Daniel Int'l Corp.,* 917 F.2d 455, 456 (10th Cir. 1990). Colorado's appellate courts have declined to recognize claims for wrongful discharge against public policy when the same statute on which the plaintiff bases his claim provides a remedy. *Corbin, supra. Accord Ferris v. Bakery, Confectionery and Tobacco Union, Local 26,* 867 P.2d 38, 45 (Colo. App. 1993); *Gamble v. Levitz Furniture Co. of the Midwest, Inc.,* 759 P.2d 761, 766 ((Colo. App. 1988).

7

Notwithstanding the regulatory overlap between the STAA and C.R.S. §§ 24-33.5-201 & 203, the fact remains that Holdbrook's wrongful discharge claim is based on the latter which SAIA does not argue contains an adequate remedial scheme. In addition, I note that none of the Colorado cases cited by SAIA specifically addresses the relationship between the STAA and wrongful discharge claims brought under similar state laws. I therefore conclude that Holdbrook's claim for wrongful termination based on his refusal to drive unsafe vehicles is not precluded by the statutory remedy set forth in the STAA.

SAIA also argues that this claim must fail because Holdbrook cannot show that he was terminated for refusing to drive unsafe vehicles. In support of this argument, SAIA notes that Holdbrook was terminated more than three months after he last drove trucks for SAIA. Holdbrook therefore cannot rely on temporal proximity alone to establish that he was terminated for refusing to drive unsafe vehicles. *See Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999) (three-month period, standing alone, is insufficient to establish causation for retaliatory conduct). Rather, Holdbrook must offer additional evidence to establish causation. *Id.* Holdbrook responds with evidence of a number of negative actions SAIA took against him after he voiced vehicle safety concerns and evidence to contradict SAIA's assertion that he violated its attendance policy. In addition, although Holdbrook cannot rely on temporal proximity alone to establish that he was terminated for refusing to drive unsafe vehicles, the relatively short time frame between when he voiced his concerns over the safety of SAIA vehicles and when SAIA allegedly began taking negative actions against him is some evidence of causation. The cumulative effect of this evidence is sufficient to support a finding that Holdbrook was terminated for refusing to drive unsafe vehicles. SAIA is therefore not entitled

to summary judgment on Holdbrook's claim for wrongful discharge against public policy based on his refusal to drive unsafe vehicles.

### 2. Wrongful Termination Claim Based on Work-Related Injury

Again, SAIA argues that this claim must fail due to lack of temporal proximity as well as Holdbrook's failure to present other evidence of causation. The evidence presented by Holdbrook of negative actions SAIA took against him following his work-related injury and to contradict SAIA's assertion that he violated its attendance policy, as well as the relevant time frame, are likewise sufficient to establish that Holdbrook was terminated in retaliation for actions he took in response to the work-related injury he suffered. SAIA is therefore not entitled to summary judgment on Holdbrook's claim for wrongful discharge against public policy based on actions he took in response to his work-related injury.

### B. Holdbrook's Claim for Intentional Infliction of Emotional Distress

In support of his claim for intentional infliction of emotional distress, Holdbrook alleges that

> [SAIA] engaged in extreme and outrageous activity by, but not limited to, subjecting [Holdbrook] to ridicule and disdain in front of other employees at driver meetings, and/or by encouraging other employees to retaliate against [Holdbrook] for filing a workers' compensation claim, and/or by directing [Holdbrook] to violate medical restrictions, and/or by repeatedly directing Plaintiff to violate Federal and State laws which violation would have resulted in the loss of his CDL and other fines and possible imprisonment.

*See* Complaint, ¶ 59.

SAIA first argues that this claim is preempted by the Colorado's Workers' Compensation Act (the "Act). The Act "provides exclusive remedies for employees suffering work-related injuries and occupational diseases." *Horodyskyj v. Karanian,* 32 P.3d 470, 474 (Colo. 2001).

Under the Act, an employee is entitled to compensation "[w]here, at the time of the injury, the employee is performing service arising out of and in the course of the employee's employment. C.R.S. §8-40-101. "[A]n injury occurs 'in the course of' employment when it takes place within the place and time limits of the employment relationship and during an activity connected with the employee's job-related functions." *Horodyskyj*, 32 P.3d at 475. "The term 'arises out of' refers to the origin or cause of an injury." *Id.* "An injury 'arises out of' employment when it has its origins in an employee's work-related functions and is sufficiently related to those functions to be considered part of the employee's employment contract." *Id.* (citation omitted).

Based on the supporting allegations, Holdbrook cannot dispute that his alleged emotional distress occurred in the course of his employment with SAIA. Holdbrook argues, however, that this injury did not arise out of his employment with SAIA because being directed to drive unsafe vehicles is tantamount to being directed to commit illegal acts and therefore cannot be part of his employment contract as a matter of law. Holdbrook cites no authority for this proposition and indeed the only logical inference from *Horodyskyj* in which the Colorado Supreme Court recognized that certain types of willful assaults are preempted by the Act, *id.* at 475, is that an assertion of illegality does not preclude preemption.

The conduct Holdbrook cites in support of his claim for intentional infliction of emotional distress claim is all work-related and not the result of any private dispute. *See Horodyskyj, supra,* 32 P.3d at 477 (inherently private assaults that are not preemepted by the Act "have their origin in the private affairs of the claimant or the tortfeasor and are unrelated to their respective work-related functions."). I therefore conclude that this claim is preempted by the Act.

Even assuming *arguendo* that Holdbrook's claim for intentional infliction of emotional distress is not preempted by the Act, Defendant also argues that the facts of this case are insufficient to establish outrageous conduct as a matter of law. I agree.

"The level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high." *McCarty v. Kaiser-Hill Co., L.L.C.,* 15 P.3d 1122, 1126 (Colo. App. 2000). "Outrageous conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Destefano v. Grabian,* 763 P.2d 275, 286 (Colo. 1988) (citations omitted). "Although the question whether conduct is outrageous is generally one of fact to be determined by a jury, it is the initial responsibility of a court to determine whether reasonable persons could differ on the question." *McCarty, supra.*

Holdbrook attempts to establish that his allegations meet the high standard for outrageous conduct with unsupported allegations that distort the undisputed facts in this case. For instance, Holdbrook asserts that SAIA "directed him to perform numerous illegal acts which would result in dangerous commercial trucks on Colorado's public roads" when, as set forth above, the evidence supports only a finding that Holdbrook was asked to drive vehicles that he felt were unsafe on 4-5 occasions and that he was only required to drive an objectionable vehicle on two occasions. Holdbrook's allegations that are supported by the record are insufficient to support a claim of outrageous conduct as a matter of law.

For these reasons, SAIA is entitled to the entry of summary judgment in its favor on Holdbrook's' claim for intentional infliction of emotional distress.

**C. Holdbrook's Recovery of Front Pay Damages**

Because I have concluded that SAIA is not entitled to summary judgment on Holdbrook's wrongful discharge claims, I must consider SAIA's argument that Holdbrook is not entitled to recover front pay as damages as a matter of law.

SAIA argues that Holdbrook's is precluded from recovering front pay as damages because he is incapable of performing the job from which he was terminated or any other job. In support of this argument, SAIA cites Colorado case law for the general principle that a wrongfully discharged plaintiff is only entitled to recover these economic losses that would place the plaintiff in the same economic position that the plaintiff would have been in but for the wrongful discharge. *See Genova v. Longs Peak Emergency Physcians, P.C.,* 72 P.3d 454, 460 (Colo. App. 2003). SAIA does not argue that Colorado's Workers' Compensation Act is Holdbrook's exclusive remedy or that Holdbrook is precluded from seeking other types of damages, and Holdbrook's response misses the point to the extent it argues these issues.

Holdbrook also argues that he is entitled to recover front pay as damages because the injury that has rendered him incapable from returning to work as a city driver is SAIA's failure to fix the load gate on the truck that injured him in violation of the law. As SAIA notes, however, Holdbrook's claims against it are based on its allegedly wrongful conduct in terminating his employment and not on any allegedly wrongful conduct that caused his work-related injury. To the extent that Holdbrook is unable to work in his former capacity as a city driver or any other capacity, an award of front pay to Holdbrook on his wrongful discharge claims would place him in a better position than he would have been in but for his wrongful termination contrary to Colorado law. Thus, in the event Holdbrook prevails on his wrongful

discharge claims at trial, he is precluded from recovering front pay as damages unless he can prove by a preponderance of the evidence that he is capable of working in some capacity.

## IV.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that

1.  Defendant SAIA's Motion for Summary Judgment [Doc # 38] is GRANTED IN PART and DENIED IN PART;

2. Plaintiff Holdbrook's claim for intentional infliction of emotional distress is DISMISSED WITH PREJUDICE; and

3. In the event Plaintiff Holdbrook prevails on either of his claims for wrongful discharge against public policy, he may only recover front pay as damages to the extent he is able to prove by a preponderance of the evidence that he is capable of working in some capacity.

Dated: April   20  , 2011 in Denver, Colorado.

                                  BY THE COURT:

                                   s/Lewis T. Babcock
                                  LEWIS T. BABCOCK, JUDGE